[Cite as *State v. Rios*, 2011-Ohio-4720.]

IN THE COURT OF APPEALS OF CLARK COUNTY, OHIO

STATE OF OHIO                    :

    Plaintiff-Appellee          :    C.A. CASE NO. 10CA0059

vs.                              :    T.C. CASE NO. 09CR0204

JUAN RIOS                        :

    Defendant-Appellant         :

. . . . . . . . .

O P I N I O N

Rendered on the 16th day of September, 2011.

. . . . . . . . .

Andrew D. Wilson, Pros. Attorney, Atty. Reg. No.0073767, Andrew R. Picek, Asst. Pros. Attorney, Atty. Reg. No. 0082121, P.O. 1608, Springfield, OH 45501
    Attorney for Plaintiff-Appellee

Keith O'Korn, Atty. Reg. No.0069834, 440 Polaris Parkway, Suite 150, Westerville, OH 43082
    Attorney for Defendant-Appellant

. . . . . . . . .

GRADY, P.J.:

{¶ 1} Defendant, Juan Rios, appeals from his conviction for vandalism, R.C. 2909.05(B)(2).

{¶ 2} On the morning of February 17, 2009, Lieutenant Vernon Whitt of the Jail Division of the Clark County Sheriff's Department

learned that a window in the dayroom of the north block on the fifth floor of the jail had been broken. At that time, Defendant was being held in a cell next to the dayroom, awaiting trial on a capital murder charge, and had access to the dayroom.

{¶ 3} Lieutenant Whitt reviewed recordings of calls made from a telephone in the dayroom on the evening before, February 16, 2009. In a call made to Shianne Rice, a male caller was heard to say that he "had been working on this hole all f-----g day." The caller also asked Rice to assist him in bringing drugs into the jail through a broken window.

{¶ 4} Defendant was indicted on one count of vandalism, R.C. 2909.05(B)(2). At Defendant's trial, Lieutenant Whitt identified the male voice heard on the recorded telephone calls, which were played for the jury, as Defendant's voice. Clark County Facilities Director Jackie Ashworth testified that the cost of replacing panes broken from the window was $1,400.00.

{¶ 5} Defendant was found guilty of the vandalism charge and was convicted. He was sentenced to a one year prison term. Defendant filed a notice of appeal.

**FIRST ASSIGNMENT OF ERROR**

{¶ 6} "THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT ALLOWED THE STATE TO PLAY TWO PORTIONS OF RECORDED JAIL PHONE CALLS AND THEN ADMITTED SAID CALLS AS AN EXHIBIT."

{¶ 7} The admission or exclusion of evidence rests within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion. *State v. Sage* (1987), 31 Ohio St.3d 173.

{¶ 8} "'Abuse of discretion' has been defined as an attitude that is unreasonable, arbitrary or unconscionable. *Huffman v. Hair Surgeon, Inc.* (1985), 19 Ohio St.3d 83, 87, 19 OBR 123, 126, 482 N.E.2d 1248, 1252. It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary.

{¶ 9} "A decision is unreasonable if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue *de novo,* would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result." *AAAA Enterprises, Inc. v. River Place Community Redevelopment* (1990), 50 Ohio St.3d 157, 161.

{¶ 10} Ann Woodruff testified that she is employed by the Clark County Information Services Department. Woodruff testified that Clark County has entered into a contract with a service in Texas to record calls made by inmates in the Clark County Jail from telephones made available to them there. The calls are traceable

to a calling card purchased by an inmate. Woodruff is able to retrieve those calls using an internet web interface.

{¶ 11} Woodruff testified that Lieutenant Vernon Whitt of the Clark County Sheriff's Department asked her to download telephone calls made on February 23, 2009, from a particular telephone in the Clark County Jail. She did so, and transcribed those calls onto a tape which she marked with her initials. The tape was introduced as State's Exhibit 2.

{¶ 12} Lieutenant Whitt corroborated Woodruff's testimony concerning the request he made of her to record certain phone calls. He re-recorded two of those calls onto a disc, which was marked as State's Exhibit 1. Whitt testified that the calls were made from a telephone in a day room of the jail to which Defendant Rios had access. Whitt testified that the calls were collect calls made to Shianne Rice. Whitt identified the male voice heard on the tapes as the voice of Defendant Rios.

{¶ 13} Before the recording of telephone calls marked as State's Exhibit 1 was played for the jury, Rios objected on several grounds, including "relevancy" and "chain of custody." The court overruled what it characterized as Defendant's "foundational" objections based on Woodruff's testimony concerning how the calls were transcribed. State's Exhibit 1 was played for the jury. In one of the recorded calls, the male voice Lieutenant Whitt had

identified as Defendant's voice is heard to say, with reference to the broken window, that he "had been working on this hole all f-----g day."

{¶ 14} Shianne Rice testified that Rios called her from the jail in February of 2009. Rice testified that Defendant told her a window in the jail was broken, but he didn't say how it had been broken.

{¶ 15} Evid.R. 103 states, in pertinent part:

{¶ 16} "(A) Effect of erroneous ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

{¶ 17} "(1) Objection. In case the ruling is one admitting evidence, timely objection or motion to strike appears of record stating the specific ground of objection, if the specific ground was not apparent from the context."

{¶ 18} Rios argues that the trial court erred when it allowed State's Exhibit 1 to be played for the jury, for two reasons. First, because "one of the snippets played implicated the Appellant in soliciting another to illegally convey contraband into the Clark County Jail." Rios made that objection at trial. The objection was apparently grounded on Evid.R. 404(B) and its prohibition against evidence of other crimes, wrongs, or acts. Second, because "the State utterly failed to provide any foundation for how

Lieutenant Whitt would have any ability or knowledge to identify Appellant's voice on a recorded phone call . . ."  Rios made no objection on that basis at trial.

{¶ 19} The court overruled Defendant's objection to evidence that Defendant intended to bring drugs into the jail through the hole in the broken window, finding "that's relevant because it goes to show identity or intent or plan."  (T. 60).  Those matters are identified by Evid.R. 404(B) as exceptions to evidence of other crimes, wrongs, or acts, that Evid.R. 404(B) otherwise prohibits.  Those exceptions also include "motive."

{¶ 20} Evidence establishing motive, intent, scheme or plan is always material because it shows why one version of events should be believed over another.  *State v. Crotts*, 104 Ohio App.3d 432, 2004-Ohio-6650, at ¶20.  Defendant argued that he is not the only inmate who could have broken the window or spoken about it.  Evidence that Defendant intended to bring drugs through the broken window is admissible to prove a motive on his part for breaking the window, which is the conduct that was the basis of the crime with which he was charged.  We find no abuse of discretion.

{¶ 21} Defendant did not specifically object at trial to Lieutenant Whitt's identification of the male voice heard on State's Exhibit 1 as Defendant's voice, on the ground that Lieutenant Whitt failed to provide the necessary foundational

evidence demonstrating how he knew that. Any error for that reason in admitting the evidence is therefore waived for purposes of appeal. Evid.R. 103(A)(1). Plain error may nevertheless be noticed. Crim.R. 52(B). Plain error does not exist unless it can be said that but for the error, the outcome of the proceeding clearly would have been different. *State v. Long* (1978), 53 Ohio St.2d 91.

{¶ 22} Defendant's argument implicates Evid.R. 901, which provides, in pertinent part:

{¶ 23} "(A) General provision

{¶ 24} "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

{¶ 25} "(B) Illustrations. By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:

{¶ 26} "(1) Testimony of witness with knowledge. Testimony that a matter is what it is claimed to be.

{¶ 27} "* * *

{¶ 28} "(5) Voice identification. Identification of a voice, whether heard firsthand or through mechanical or electronic

transmission or recording, by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker."

{¶ 29} "Voice identification is established by opinion evidence, that is, by testimony of a witness that, based on his familiarity with a speaker's voice, it is his belief that the voice sought to be identified or authenticated is that of the specific speaker." Weissenberger's Ohio Evidence Treatise (2010 Ed.), §901.68. "The proponent of voice identification testimony must establish by way of foundation that the witness has some familiarity with the alleged speaker's voice." *Id.*, at §901.71. Failure to satisfy the familiarity requirement is subject to an objection pursuant to Evid.R. 602, which provides: "A witness may not testify to a matter unless evidence is introduced sufficient to the support a finding that the witness has personal knowledge of the matter."

{¶ 30} The State argues that the jury could reasonably infer that Lieutenant Whitt had the required familiarity with Defendant's voice. The State points to the fact that Lieutenant Whitt was assigned to the jail division of the Sheriff's Office, and that he had testified that jail personnel attempted to interview all the inmates of the pod in which Defendant was housed about the broken window. We do not agree that such evidence satisfies Evid.R. 901 or 602. It would be speculative for the jury to find

from that evidence the familiarity with Defendant's voice that Evid.R. 901(B)(5) requires.

{¶ 31} Weissenberger writes, concerning Evid.R. 901: "Conceptually, the function of authentication or identification is to establish, by way of preliminary evidence, a connection between the evidence offered and the relevant facts of the case." *Id*, at §901.1. The example in Evid.R. 901(B)(5) of authentication of a recording to identify a voice heard on the recording satisfies that function. However, Evid.R. 901(B) states that the examples therein are "[b]y way of illustration only, and not by way of limitation." Our plain error analysis requires an inquiry whether other evidence was sufficient to demonstrate that the male voice heard on the recordings played for the jury was Defendant's voice.

{¶ 32} Defendant was an inmate of the Clark County Jail on February 23, 2009, when the calls heard on State's Exhibit 1 were made and recorded. The calls were made from a telephone in a day room of the jail to which Defendant had access. The calls were collect calls made to Shianne Rice. Rice testified that Defendant made calls to her from the jail during that time. Rice further testified that in at least one of the calls Defendant made to her, Defendant told her of a window in the jail that was broken. On this record, and with respect to that particular evidence, the jury could reasonably infer that the male voice heard on the

recordings was Defendant Rios's voice. Therefore, we find that the outcome of the trial, Defendant's conviction based on the guilty verdict the jury returned, would not <u>clearly</u> have been different but for the error in admitting Lieutenant Whitt's voice identification evidence. Plain error is therefore not demonstrated. *State v. Long*.

{¶ 33} Defendant's first assignment of error is overruled.

<u>SECOND ASSIGNMENT OF ERROR</u>

{¶ 34} "THE CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶ 35} A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive. *State v. Hufnagle* (Sept. 6, 1996), Montgomery App. No. 15563. The proper test to apply to that inquiry is the one set forth in *State v. Martin* (1983), 20 Ohio App.3d 172, 175:

{¶ 36} "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Accord: *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52.

{¶ 37} The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve. *State v. DeHass* (1967), 10 Ohio St.2d 230. In *State v. Lawson* (August 22, 1997), Montgomery App. No. 16288, we observed:

{¶ 38} "Because the factfinder . . . has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness."

{¶ 39} This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of facts lost its way in arriving at its verdict. *State v. Bradley* (Oct. 24, 1997), Champaign App. No. 97-CA-03.

{¶ 40} Defendant argues that his conviction for vandalism is against the manifest weight of the evidence because Lieutenant Whitt could not credibly identify Defendant's voice on the recorded jail phone calls, inasmuch as he did not testify how he knew or was able to recognize Defendant's voice. As we discussed in

overruling Defendant's first assignment of error, on the particular facts in this case, the jury could reasonably infer from evidence other than Lieutenant Whitt's voice identification testimony that the male voice heard on the recorded phone calls made from the jail that were played for the jury was Defendant's voice. Any error in admitting Lieutenant Whitt's opinion was harmless in relation to Defendant's manifest weight claim.

{¶ 41} Defendant also claims that his conviction is against the manifest weight of the evidence because the State failed to put on any evidence to prove chain of custody of the recorded jail phone calls. In *State v. Hooper*, Montgomery App. No. 22883, 2010-Ohio-4041, at ¶35, we observed:

{¶ 42} "The State has the burden of establishing the chain of custody of a specific piece of evidence, but the State's burden is not absolute; '[t]he state need only establish that it is reasonably certain that substitution, alteration or tampering did not occur.' *State v. Barzacchini* (1994), 96 Ohio App.3d 440, 457–458, 645 N.E.2d 137; *State v. Blevins* (1987), 36 Ohio App.3d 147, 150, 521 N.E.2d 1105. While authentication of evidence is a condition precedent to its admission, the condition is satisfied when the evidence is 'sufficient to support a finding that the matter in question is what its proponent claims.' Evid.R. 901(A); *State v. Hunter,* 169 Ohio App.3d 65, 861 N.E.2d 898, 2006–Ohio

5113, at ¶ 16."

{¶ 43} Ann Woodruff, an employee of the Clark County Information Services Department, testified at trial about the systems and procedures in place for recording phone calls made from the jail by inmates, and how she retrieved the recorded jail phone calls made from a particular phone in the jail between February 13-17, 2009, and gave them to Lieutenant Whitt. Furthermore, Lieutenant Whitt testified regarding the request he made of Woodruff to retrieve certain recorded jail phone calls in this case, and how he personally made a copy of the recorded jail phone calls he received from Woodruff and did not alter those recordings in any way. On the evidence presented in this case, it is reasonably certain that no alteration or tampering with the recorded jail phone calls occurred.

{¶ 44} The trier of facts in this case, the jury, did not lose its way simply because it chose to believe the State's witnesses, which it had a right to do. *DeHass*. The credibility of the witnesses and the weight to be given to their testimony were matters for the trier of facts to decide. *Id*.

{¶ 45} Reviewing this record as a whole, we cannot say that the evidence weighs heavily against a conviction, that the trier of facts lost its way in choosing to believe the State's witnesses, or that a manifest miscarriage of justice has occurred.

Defendant's conviction is not against the manifest weight of the evidence.

{¶ 46} Defendant's second assignment of error is overruled.

THIRD ASSIGNMENT OF ERROR

{¶ 47} "THE TRIAL COURT ERRED WHEN IT FAILED TO CREDIT APPELLANT WITH ANY JAIL TIME CREDIT IN THE VANDALISM CASE AT SENTENCING GIVEN THAT APPELLANT HAD NOT EVEN BEEN TRIED, CONVICTED OR SENTENCED IN THE OTHER PENDING CAPITAL CASE, AND THUS, VIOLATED R.C. 2967.191 AND THE EQUAL PROTECTION CLAUSES OF THE FOURTEENTH  AMENDMENT TO THE U.S. CONSTITUTION AND ARTICLE I, SECTION TWO OF THE OHIO CONSTITUTION."

{¶ 48} Defendant argues that the trial court erred by failing to award him jail time credit for the 414 days he spent in jail awaiting trial on this vandalism charge.

{¶ 49} In *State v. Coyle*, Montgomery App. No. 23450, 2010-Ohio-2130, at ¶5-7, this court stated:

{¶ 50} "'[W]here, for whatever reason, a defendant remains in jail prior to his trial, he must be given credit on the statutorily fixed sentence ultimately imposed for all periods of actual confinement.' *White v. Gilligan* (S.D.Ohio 1972), 351 F.Supp. 1012, 1014. The requirement enforces the Fourteenth Amendment right to equal protection of the law. *Workman v. Cardwell* (N.D.Ohio 1972), 31 Ohio Mis. 99, 31 Ohio Misc. 99, 338 F.Supp. 893.

{¶ 51} "R.C. 2967.191 implements the equal protection right by imposing on the department of rehabilitation and correction the specific responsibility to 'reduce the stated prison term of a prisoner ... by the total number of days that the prisoner was confined for any reason arising out of the offense for which the prisoner was convicted and sentenced, including confinement in lieu of bail while awaiting trial [,] ... and confinement while awaiting transportation to the place where the prisoner is to serve the prisoner's term.'

{¶ 52} "'Although the [department of rehabilitation and correction] has a mandatory duty pursuant to R.C. 2967.191 to credit an inmate with the jail time already served, it is the trial court that makes the factual determination as to the number of days of confinement that a defendant is entitled to have credited toward his sentence.' *State ex rel. Rankin v. Ohio Adult Parole Authority,* 98 Ohio St.3d 476, 786 N.E.2d 1286, 2003-Ohio-2061, at ¶ 7. Furthermore, any error in the determination the court makes 'may be raised by way of a direct appeal of his criminal case.' *Id.,* at ¶ 10, 786 N.E.2d 1286, citing *State ex rel. Jones v. O'Connor* (1999), 84 Ohio St.3d 426, 704 N.E.2d 1223."

{¶ 53} Prisoners are not entitled to jail time credit against a sentence of incarceration for any period of incarceration that arises from facts separate and apart from those upon which their

sentence is based. *State v. Logan* (1991), 71 Ohio App.3d 292; *State v. Redman*, Ross App. No. 00CA2556, 2001-Ohio-2679; *State v. Klein*, Hamilton App. No. C-040176, C-040224, 2005-Ohio-1761.

{¶ 54} Defendant was charged with the offense of vandalism by indictment filed on March 9, 2009 in Case No. 09CR0204. An arrest warrant was issued on that indictment and served on Defendant on March 10, 2009. At that time, Defendant was being held in jail without bond on unrelated capital murder charges in Case No. 08-CR-523. Throughout the pendency of this vandalism case, Defendant continued to be held in jail on both the unrelated capital murder charges in Case No. 08-CR-523, and also on the $2,500 cash or surety bond in the vandalism case that Defendant did not post.

{¶ 55} At the sentencing hearing on April 26, 2010, the trial court indicated that Defendant would receive credit for any time he is entitled to. The court granted the parties until April 30, 2010, to submit memoranda on the amount of jail time credit Defendant should receive. On April 27, 2010, Defendant filed a memo requesting 414 days of jail time credit for the time Defendant spent in jail awaiting trial on this vandalism charge, from indictment to date of conviction. In its judgment entry of conviction, the trial court awarded Defendant jail time credit only from April 26, 2010, the date of his conviction, until his conveyance to the penitentiary. The trial court did not give

Defendant any credit for the time he spent in jail prior to trial on this vandalism charge.

{¶ 56} In arguing that the trial court erred in failing to award him 414 days of jail time credit for the time he spent in jail awaiting trial on this vandalism charge, Defendant relies upon *State v. Klein*.  That reliance is misplaced, because *Klein* is distinguishable.  In *Klein,* the defendant was held in jail prior to trial on both a receiving stolen property charge, for which he did not post bond, and on a parole holder  based solely upon the same receiving stolen property charge.  The trial court refused to give Defendant credit against the sentence imposed on the receiving stolen property conviction  because, except for one day, Defendant was at that same time also being held in jail on the parole holder.  Accordingly, the trial court credited Defendant for one day of pretrial confinement,  that being the amount of time that he was held only on the receiving stolen property charge.

{¶ 57} The court of appeals reversed the trial court's decision to not give the defendant credit for time served when it imposed the sentence for receiving stolen property.  The court of appeals concluded that the trial court's finding was speculative. Defendant had not yet been convicted and sentenced for the parole violation at the time the trial court sentenced him for the

receiving stolen property conviction, and it could not be known at that time whether Defendant would be convicted and sentenced for the parole violation. The court found the proper approach was to credit the time served to the crime for which Defendant was convicted. Defendant would not then get credit for the same time against the parole violation, so as to avoid a "double credit."

{¶ 58} Unlike in *Klein*, the other matter upon which Defendant was held in jail at the same time he was held on the vandalism charge, the capital murder charges in Case No. 08-CR-523, do not arise from the same facts that give rise to the vandalism charge. They are separate, unrelated matters. Even had the vandalism charge been dismissed, Defendant would continue to be held in jail on the capital murder charges. Therefore, because the time Defendant spent in jail awaiting trial on the capital murder charges in Case No. 08-CR-523 overlaps the time he spent in jail prior to trial on this vandalism charge, and does not arise from the same facts on which his sentence for vandalism is based, Defendant was not entitled to jail time credit against the sentence imposed on the vandalism conviction for the time he spent in jail awaiting trial.

{¶ 59} Defendant's third assignment of error is overruled. The judgment of the trial court will be affirmed.

FROELICH, J. And HALL, J., concur.


Copies mailed to:

Andrew R. Picek, Esq.
Keith O'Korn, Esq.
Hon. Douglas M. Rastatter